# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **PAMELA RAYE HOWELL,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **Case No. CIV-08-238-RAW-SPS** |
| | ) | **(Underlying Case No. CR-04-91-RAW)** |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Respondent.** | ) | |

## REPORT AND RECOMMENDATION

The Petitioner Pamela Raye Howell was indicted on drug charges arising out of a methamphetamine manufacturing operation near Cookson, Oklahoma. *See* Docket No. 1, Case No. CR-04-91-RAW. On September 24, 2004, the Petitioner was convicted on four counts: (i) on count one for unlawful possession of pseudoephedrine; (ii) on count two for possession of methamphetamine with intent to distribute; (iii) on count three for attempt to manufacture methamphetamine; and, (iv) on count five for possession of a firearm in furtherance of a drug-trafficking crime. On February 15, 2005, the Court sentenced the Petitioner to concurrent 189-month prison terms on counts one through three, a 60-month prison term consecutive to the others on count five, and concurrent terms of supervised release of 36 months on counts one, three and five, and 48 months for count two. *See* Docket No. 47, Case No. CR-04-91-RAW. The conviction and sentences were affirmed on appeal. *See* Docket No. 55, Case No. CR-04-91-RAW.

The Petitioner sought relief in this Court by way of a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody [Docket

No. 1].  The Petitioner alleged ineffective assistance of counsel and submitted affidavits supporting the allegations, including her own affidavit and others, *inter alia*, her father Claude Howell and her daughter Destini Rainwater.  The Court dismissed the Petition on September 14, 2009, but the U.S. Court of Appeals for the Tenth Circuit reversed on June 22, 2010, and instructed the Court to conduct an evidentiary hearing on the Petitioner's contentions.  *See United States of America v. Howell*, 383 Fed. Appx. 782 (10th Cir. 2010).  The Court referred the Petition to the undersigned Magistrate Judge for a hearing pursuant to 28 U.S.C. § 636(b)(1)(B), and a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(C).

## THE EVIDENTIARY HEARING

The evidentiary hearing commenced on September 29, 2010. The first witness was Donn Baker, an attorney who initially represented the Petitioner in this case but withdrew after perfecting her appeal.  *See* Docket Nos. 23, 30.  Mr. Baker criticized certain aspects of the representation provided by the Petitioner's trial counsel, Janice Walters Purcell, from the standpoint of an experienced defense attorney.  The second witness was Destini Rainwater, the Petitioner's daughter, who testified, *inter alia*, that she was called as a witness during the Petitioner's criminal trial with little or no preparation by trial counsel. The third witness was Tatum Sorrels, an acquaintance who felt the Petitioner received too severe a sentence and agreed to help her by providing an affidavit supporting the Petition while the two were housed in the same federal correctional facility.  Ms. Sorrels testified that one of the principal witnesses against the Petitioner lied during her trial and claimed

that she told the prosecutor, Assistant United States Attorney Rob Wallace, in advance of the trial that the witness would be lying, but he instructed her to withhold this potentially exculpatory evidence. The prosecutor objected to this testimony (in essence an accusation of prosecutorial misconduct), asked to withdraw from representation of the government as a potential witness in the case and sought continuance of the hearing to allow the U.S. Department of Justice to determine whether prosecutors from a different judicial district should be appointed. The Petitioner's attorney Robert Ridenour (who was appointed to represent the Petitioner after Mr. Baker withdrew) objected and urged that the hearing be completed at that time, but the undersigned Magistrate Judge agreed with the prosecutor that withdrawal was required under the circumstances and continued the hearing.

The Justice Department appointed two prosecutors from the Western District of Oklahoma to represent the government in this matter. The undersigned Magistrate Judge appointed counsel to advise Ms. Sorrels regarding any further testimony before the Court. Ms. Sorrels eventually advised the Court that she intended to recant her testimony from the first day of the hearing, and Mr. Ridenour thereupon sought leave to withdraw as the Petitioner's attorney as a potential witness in the case. *See* Docket No. 68.

The evidentiary hearing resumed on November 15, 2010. At the beginning of the hearing, the undersigned Magistrate Judge denied Mr. Ridenour's motion to withdraw, reasoning that any testimony he might be called upon to give would be undisputed, *i. e.*, that Ms. Sorrels would freely admit having lied to Mr. Ridenour about her now-recanted testimony at the first day of the evidentiary hearing, *see, e. g.,* 5 Okla. Stat. Ch. 1, App. 3-

A, Rule 3.7(a)(1) ("A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness unless . . . the testimony relates to an uncontested issue[.]"), and that further delay and yet another lawyer were not in the Petitioner's best interest. Mr. Ridenour disagreed, however, and upon resuming direct examination of Ms. Sorrels devoted most of his questions to eliciting testimony he could apparently dispute and repeatedly renewing his motion to withdraw.[1] When it became fairly clear that the proceedings were no longer serving the Petitioner's best interest in obtaining relief under Section 2255, the undersigned Magistrate Judge allowed Mr. Ridenour to withdraw after determining that the Petitioner did not object and continued the hearing. Federal Public Defender Julia O'Connell eventually replaced Mr. Ridenour as counsel for the Petitioner.

The evidentiary hearing finally concluded on January 18, 2011. The government cross-examined Ms. Sorrels, who confirmed she was recanting her previous testimony from the first day of the hearing and explained how this came about. The Petitioner took the stand and offered testimony generally consistent with Ms. Sorrels' first-day testimony and flatly contradictory with Ms. Sorrels' second-day testimony. And Seresa Kesselring (Ms. Sorrels' co-defendant) offered testimony generally supportive of the contentions in the Petition. After the Petitioner rested, the government called trial counsel Ms. Purcell,

---

[1] Ms. Sorrels did in fact recant her testimony from the first day of the evidentiary hearing. She admitted perjuring herself at that time as well as in her affidavit in support of the Petition, which she admitted was written for her by the Petitioner. She also admitted lying to Mr. Ridenour in preparing for her testimony at the hearing, and although she claimed she did not remember some of things about which Mr. Ridenour asked her, the only thing she actually denied telling Mr. Ridenour during the interview was that a specific type of gun was involved in the crime with which the Petitioner was charged. Mr. Ridenour's questioning of Ms. Sorrels strongly suggested that he could dispute this denial, but this is not altogether clear because Mr. Ridenour did not testify despite being present when the hearing concluded on January 18, 2011.

who answered the Petitioner's allegations of ineffective assistance and explained in detail her defense of the Petitioner at trial. At the conclusion of the hearing, the undersigned Magistrate Judge allowed the parties a final round of briefing and took the matter under advisement. For the reasons set forth below, the undersigned Magistrate Judge now recommends denial of relief under 28 U.S.C. § 2255.

## ANALYSIS

In order to prove ineffective assistance of counsel, the Petitioner must show two things: (i) that counsel's performance was constitutionally deficient; and, (ii) that such deficient performance prejudiced her defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Williamson v. Ward*, 110 F.3d 1508, 1514 (10th Cir. 1997). "[T]he proper standard for attorney performance is that of reasonably effective assistance . . . When a convicted defendant complains of ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687-88, *citing Trapnell v. United States*, 725 F.2d 149, 151 (2nd Cir. 1983). Further, inquiry into the effectiveness (or ineffectiveness) of counsel is adjudged from the circumstances of the conduct and perspective of counsel at the time counsel was given. *See Strickland*, 466 U.S. at 689 ("A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."). Finally, there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional

assistance . . . [and] the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.*, *citing Michel v. Louisiana*, 350 U.S. 91, 101 (1955); *United States v. Carr*, 80 F.3d 413, 417-18 (10th Cir. 1996) ("A court's review of the attorney's performance must be highly deferential."), *citing Strickland*, 466 U.S. at 689.

### A.  Failure to Prepare for Trial

The Petitioner first argues that trial counsel rendered ineffective assistance at trial by failing to: (i) investigate key witnesses; (ii) conduct other necessary pretrial discovery; and (iii) devise a strategy to obviate inculpatory statements made by the Petitioner via telephone while incarcerated in the Muskogee County Jail.

### 1.  Failure to investigate key witnesses.

Whether to interview a witness is "a decision related to adequate preparation for trial[,]" and Ms. Purcell had "'a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.'" *Chambers v. Armontrout*, 907 F.2d 825, 828 (8th Cir. 1990), *quoting Strickland*, 466 U.S. at 691.  "In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Strickland*, 466 U.S. at 691.  Further, even if counsel breached the duty to investigate, the defendant "must demonstrate 'the existence of admissible evidence which could have been uncovered by reasonable investigation and which would have proved helpful to the defendant either on cross-examination or in his case-in-chief at

the original trial.'" *Beran v. United States*, 580 F.2d 324, 327 (8th Cir. 1978), *quoting McQueen v. Swenson*, 498 F.2d 207, 220 (8th Cir. 1974). The Petitioner argues that Ms. Purcell's failure to conduct proper investigation of certain witnesses prior to trial affected the ability to impeach those witnesses and present evidence that could have established reasonable doubt as to her guilt. Witnesses the Petitioner contends should have been investigated are Clonnie Layman, Daniel Layman, Jimmy Whorton and the above-mentioned Tatum Sorrels and Destini Rainwater.

Clonnie Layman was a notorious methamphetamine cook and leader of a drug ring operating in a rural Cherokee County area known as "Bluetop." The Petitioner was reportedly his girlfriend. The two were arrested on August 25, 2003 when they unsuspectingly drove into the middle of the execution of a search warrant on Layman's property at Bluetop. A meth lab was discovered there in a mobile home on the premises, and drugs, paraphernalia and money were found in the car, which was driven by Clonnie Layman but belonged to the Petitioner. Methamphetamine was also found on Layman's person. The Petitioner was arrested again on September 24, 2003, when police searched a van she was driving during a traffic stop and found pseudoephedrine tablets and empty blister packs. Daniel Layman was Clonnie's nephew, an acquaintance of the Petitioner and a frequent visitor to the premises at Bluetop. Ms. Sorrels and Ms. Kesselring were also visitors at Bluetop.

By the time the Petitioner was indicted in this case, Clonnie Layman, Sorrels

and others had been convicted and sentenced to prison on state charges; the Petitioner was the only person charged in this Court at that time. After the Petitioner was convicted and sentenced in this Court, Clonnie Layman's state court conviction was reversed by the Oklahoma Court of Criminal Appeals, and he was thereupon indicted in this Court along with Ms. Sorrels and Ms. Kesselring (and others) in Case No. CR-06-11-JH. Ms. Sorrels and Ms. Kesselring reached plea agreements requiring them to cooperate in the prosecution of Clonnie Layman; Daniel Layman and Mr. Whorton testified against both the Petitioner and Clonnie Layman, who was sentenced upon his conviction to a total of 160 years (60 consecutively). Ms. Sorrels, Ms. Kesselring and another defendant who cooperated received substantially shorter sentences than did the Petitioner almost two years earlier.

### a. Clonnie Layman

The Petitioner argues there was "no reason to not attempt to interview [Clonnie] Layman" because he was in prison when she was indicted and throughout her trial; thus, "[t]he worst that could have happened would have been his refusal to talk with trial counsel." *See* Docket No. 3, p. 7. But trial counsel Ms. Purcell testified at the evidentiary hearing that she went to great lengths to interview Clonnie Layman. She contacted two attorneys who previously represented Clonnie Layman and was informed that she would not be permitted to talk to him because he was appealing his life sentence in state court. *See* Docket No. 80, Ex. 1, p. 233.

Furthermore, even if fault could be found with Ms. Purcell's failure to contact Clonnie Layman, the Petitioner fails to show she was prejudiced thereby. The Petitioner alleges in wholly conclusory fashion that Clonnie Layman would have testified that she was not involved in the methamphetamine operation at Blue Top, and that the illicit pseudoephedrine pills found in the van that she was driving were not hers. *See* Docket No. 3, Ex. 1, ¶ 20. But the Petitioner's claim that she was not involved was refuted by her own witness, Ms. Sorrels, who testified she had witnessed the Petitioner's involvement with Clonnie Layman in the methamphetamine cooks at Bluetop. *See* Docket No. 80, Ex. 1, pp. 169-70. The undersigned Magistrate Judge concludes that any testimony Clonnie Layman might have given would either have been unhelpful to her defense *or* unbelievable to the jury even if the court determined that counsel had been somehow deficient in her investigation and neglected to call Clonnie Layman. *See United States v. Thomas*, 33 Fed. Appx. 446, 448 (10th Cir. 2002) ("This argument is completely speculative because petitioner failed to support his assertion with any supporting evidence, such as an affidavit from the witness containing a proffer of her testimony. Thus, petitioner failed to demonstrate that his appellate counsel was 'objectively unreasonable' in failing to assert this claim on direct appeal, or that there is a reasonable probability that, but for counsel's failure to raise the issue, petitioner would have prevailed in challenging his conviction on direct appeal."), *citing Neill v. Gibson*, 278 F.3d 1044 (10th Cir. 2001). *See also United States v. Delana*, 404 Fed. Appx. 318, 321 (10th Cir. 2010) (failure to call a witness previously convicted of multiple felonies

was not ineffective assistance of counsel because the jury was not likely to find the witness credible) [unpublished opinion]; *United States v. Nicholson*, 243 Fed. Appx. 378, 383 (10th Cir. 2007) ("[E]ven if we assume Nicholson's attorney erred, Nicholson offers no insight as to what his girlfriend's testimony would have been, how it would have discredited the other evidence against him, or how it would have accounted for his apparent participation in each of the drug transactions about which evidence was presented at trial.") [unpublished opinion].

### b. Daniel Layman

The Petitioner also alleges that ineffective assistance in the failure by Ms. Purcell to interview Daniel Layman prior to trial and to elicit testimony from him at trial: (i) that he had a motive to lie about her, *i. e.*, he held a grudge because the Petitioner refused to date him; and (ii) that his claim to have first met the Petitioner when he delivered a gun to Clonnie Layman at Bluetop was false. Ms. Purcell testified that she *did* make an effort to speak with Daniel Layman, *i. e.*, she spoke to the prosecutor, who advised her that Daniel Layman refused to speak to her, and she asked the Petitioner about Daniel Layman's whereabouts, all to no avail. *See* Docket No. 80, Ex. 1, p. 229. Furthermore, although Ms. Purcell *did* impeach Daniel Layman's testimony at trial on a number of points, *e. g.*, that he had been arrested for possession of methamphetamine obtained from his uncle Clonnie Layman, and that his fingerprints were on a flask found at Bluetop (thus implicating him in the methamphetamine cooks on Bluetop), Ms. Purcell testified she made a strategy decision not to impeach Daniel Layman about his relationship with the

Petitioner because felt it would do more harm than good, *i. e.*, it would not be "advantageous to [Petitioner] for her to know him more than what he was stating." *See* Docket No. 80, Ex. 1, p. 231; *see also* Case No. CR-04-91-RAW, Transcript of Jury Trial, pp. 323, 325. "[T]he manner in which counsel cross-examines a particular witness is a strategic choice and therefore 'virtually unchallengeable.'" *Kessler v. Cline*, 335 Fed. Appx. 768, 770 (10th Cir. 2009), *quoting Strickland*, 466 U.S. at 690. The undersigned Magistrate Judge finds that Ms. Purcell's method of impeachment regarding Daniel Layman was a reasonable decision on the part of counsel.

### c. Jimmy Whorton

Jimmy Whorton's testimony at the Petitioner's trial consisted entirely of *his* role and familiarity with Clonnie Layman's methamphetamine operation, *i. e.*, he "worked for Mr. Layman retrieving certain chemicals, pills, batteries and stuff for him to manufacture methamphetamine." Case No. CR-04-91-RAW, Transcript of Jury Trial, p. 328. He testified that Clonnie Layman used Vitablend to cut his methamphetamine, which was the substance found in the car when the Petitioner and Clonnie Layman were arrested, *see id.* at 331, and that he had seen her at Clonnie Layman's house in Broken Arrow, Oklahoma, that he did not know her personally, and that his only contact with her was "there at the house [in Broken Arrow] when her and Clonnie was talking about jobs and stuff that she was to do" in early 2003. *See id.* at 333. With regard to Mr. Whorton, Ms. Purcell testified she did not interview him because she was not aware of any witness statements attributable to him. *See* Docket No. 80, Ex. 1, p. 230. She did, however, effectively

impeach Whorton with evidence of prior convictions and the fact that he did not know the Petitioner personally. See Case No. CR-04-91-RAW, Transcript of Jury Trial, pp. 331-33. In any event, the Petitioner identifies no evidence that would have been helpful to her defense that would have been uncovered through further investigation of Mr. Whorton, and the undersigned Magistrate Judge is therefore unable to conclude that the Petitioner was in any way prejudiced by Ms. Purcell's handling of Mr. Whorton or his testimony.[2]

### d. Tatum Sorrels

The Petitioner identified Ms. Sorrels as a source of "useful information that would have created reasonable doubt" and claims Ms. Purcell rendered ineffective assistance by failing to interview her prior to trial. *See* Docket No. 3, p. 8. But Ms. Purcell testified that she made several attempts to locate Ms. Sorrels prior to trial, including, *inter alia*, contacting authorities, interviewing the Petitioner (who had no address for Ms. Sorrels), utilizing a web-based search program called Accurint, and detailing an investigator to look for Ms. Sorrels. *See* Docket No. 80, Ex. 1, pp. 261-66. Ms. Purcell also testified that she contacted the Petitioner's former attorney, who offered access to her case files so that Ms. Purcell could identify potential witnesses and get information on them, including Ms. Sorrels, and a state probation officer to see if she had a listing for Ms. Sorrels, all to

---

[2] The Petitioner also argues that Ms. Purcell rendered ineffective assistance of counsel by failing to obtain witness statements for Daniel Layman and Jimmy Whorton for use in cross-examining them at trial. Ms. Purcell testified, however, that at least as to Jimmy Whorton, she was unaware of any such statements. *See* Docket No. 80, Ex. 1, p. 230. In any event, aside from the conclusory allegation that such statements would have been helpful in impeaching those witnesses, the Petitioner has not shown how she has been prejudiced thereby, *i. e.*, that having such statements (if they do exist) would in any way have tended to create a reasonable doubt as to her guilt. *Strickland*, 466 U.S. at 694.

no avail.  *See id.* at 261-66.  Assuming *arguendo* that all these efforts could somehow be characterized as deficient performance under *Strickland*, it is difficult indeed to imagine how Ms. Sorrels' testimony could have been helpful given her testimony on the third day of the hearing (which affirmed the incriminating testimony she gave at the Petitioner's trial), *e. g.*, Ms. Sorrels testified that she had personal knowledge of the Petitioner's role in the manufacturing of methamphetamine at Bluetop, namely, that the Petitioner brought pills to Clonnie Layman to assist in the manufacture of methamphetamine at Bluetop, *see* Docket No. 80, Ex. 1, pp. 169-70, and that when she went to Bluetop a couple of times a week during the relevant time frame, the Petitioner was always there with Clonnie Layman.  *See* Docket No. 80, Ex. 1, pp. 104, 170.  And although Ms. Sorrels did offer testimony on the second day of the evidentiary hearing that was arguably helpful to the Petitioner, there is nothing to suggest that such testimony would have been any more believable to a jury than it was to the undersigned Magistrate Judge given Ms. Sorrels' admission that it was wholly perjurious.  *See* Docket No. 80, Ex. 1, pp. 159-60, 162, 166. It is quite clear that any failure on the part of Ms. Purcell to investigate Ms. Sorrels as a potential witness did not prejudice the Petitioner's defense at trial.

### e. Destini Rainwater

The Petitioner also argues Ms. Purcell rendered ineffective assistance by failing to interview her daughter Destini Rainwater, who could have testified she had seen Clonnie Layman's travel trailer at a trailer park in Glenpool but never at Bluetop, where the meth lab was found.  The Petitioner cannot, however, show she was prejudiced by the absence

of this testimony from her daughter, because it is undisputed that the Petitioner and the travel trailer were both at Bluetop when the meth lab was found and the Petitioner was arrested with Clonnie Layman, and it is otherwise inconsequential where Destini Rainwater may have seen the travel trailer. Furthermore, the testimony this testimony from Destini may well have been more harmful than helpful to the Petitioner, as it confirms her relationship with Clonnie Layman and her connection with the travel trailer. In any event, Ms. Purcell testified at the evidentiary hearing that she was never given permission to interview the Petitioner's daughter, despite asking for such permission on *three s*eparate occasions. *See* Docket No. 80, Ex. 1, p. 234.

### 2. Failure to review jailhouse phone calls.

The Petitioner contends Ms. Purcell's representation was constitutionally deficient because: (i) she failed to review transcripts of jailhouse telephone conversations between the Petitioner and her father; and (ii) develop a strategy for dealing with the incriminating statements the Petitioner made during those calls. While it is not otherwise entirely clear from the testimony at the evidentiary hearing or the Petitioner's trial transcript that every recorded conversation was reviewed with the Petitioner, Ms. Purcell testified that she *did* review all of the phone calls, went over each of them with the Petitioner, and made notes as she went along. *See* Docket No. 80, Ex. 1, p. 227. This is substantiated in part by objections made by Ms. Purcell during the trial, *e. g.*, she objected during the government's opening statement to the mischaracterization of the Petitioner's statement during a call that "the officers could not possibly have the mousetrap destructive device

because she went there and she . . . retrieved it herself when she returned or went to that lab." *See* Case No. CR-04-91-RAW, Transcript of Jury Trial, p. 21. The undersigned Magistrate Judge finds no reason to disbelieve Ms. Purcell's testimony on this point. In any event, the Petitioner has not shown any credible defense that could have been mounted to the Petitioner's statements (other than to deny that *some* of the calls may not have come from the Petitioner), let alone how any failure by counsel to review each and every statement prevented Ms. Purcell from discovering and mounting such a defense.

### B. Providing Inadequate Legal Advice

In addition to complaints about trial representation, the Petitioner contends that Ms. Purcell rendered ineffective assistance by failing to properly advise her about: (i) the advantages and disadvantages of the plea agreement offered by the government; (ii) the nature of the particular charges against the Petitioner and the evidence pertaining thereto; and (iii) the Petitioner's absolute right to testify in her own defense.

### 1. Failure to advise regarding the plea agreement.

As with other claims of ineffective assistance of counsel, in the context of the plea process the Petitioner must satisfy both prongs of the *Strickland*: (i) that the performance of counsel fell below objective standards of reasonableness; and (ii) that prejudice to the petitioner resulted from such deficient performance. *See, e. g., United States v. Weeks*, 653 F.3d 1188, 1200-01 (10th Cir. 2011). The prejudice requirement in this regard "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). Thus, the

Petitioner "must show that there is 'a reasonable probability that, but for counsel's errors,' [s]he would have pled guilty and received a lesser sentence." *Michael v. United States*, 168 F. Supp. 2d 518, 524 (D. Md. 2001), *citing Hill*, 474 U.S. at 59.

Ms. Purcell memorialized her discussion with the Petitioner regarding the benefits and disadvantages of entering into the offered plea agreement in a letter dated August 23, 2004. *See* Docket No. 3, Ex. 6. Ms. Purcell advised the Petitioner that the offer was for a guilty plea to count one of the indictment, dismissal of the remaining counts, and a ten-year prison term, subject to less time *if* the Petitioner cooperated with the government's ongoing investigation. *Id.* Ms. Purcell also advised the Petitioner "could be sentenced to forty five (45) years on all of the counts" if she proceeded to trial and was found guilty. Ms. Purcell testified at the evidentiary hearing that she wrote the letter quickly and "just [wanted] something . . . for her files." *See* Docket No. 80, Ex. 1, p. 242-43.

Ms. Purcell also testified, however, that the letter was not the only communication she had with Petitioner regarding the advantages of a plea agreement. She indicated that she spoke several times with the Petitioner about the government's offer, *e. g.*, telling the Petitioner that while ten years "seems like a long time . . . it's going to go by faster than the 25 to 30 years that you are looking at under the guidelines" and advising that the Petitioner accept the offer. *See* Docket No. 80, Ex. 1, p. 242. Ms. Purcell also indicated that she discussed the benefits of a guilty plea over proceeding to trial with the Petitioner on several occasions, *e. g.*, in connection to a meeting under Fed. R. Crim. P. 11 to discuss the jailhouse phone calls, during which the prospect of a plea agreement and

cooperation by the Petitioner were also raised, and later when Ms. Purcell discussed with the Petitioner the benefits of entering a "blind plea," *i. e.*, obtaining credit for accepting responsibility and the possibility of a shorter sentence by way of downward departure for substantial assistance. *Id.* at 275. At the Rule 11 meeting, however, the Petitioner was "upset and didn't want to be there anymore" after the prosecutor played recordings of her jailhouse telephone conversations. *See* Docket No. 80, Ex. 1, p. 270. And after the meeting, although the prosecutor made another offer contingent upon cooperation to counsel, *see id.* at 271, the Petitioner testified the offer was contingent upon cooperation regarding an individual by the named Bobby Kelly, whom she did not know, and she therefore was not willing to cooperate. *See id.* at 190. Ms. Purcell testified that Bobby Kelly's name was brought up, but the offer was *not* specific to him because the government "was interested in . . . Dallas and Eastern Oklahoma," in which the Petitioner was considered a major player because of her comments during a jailhouse call about traveling to Dallas to obtain pseudoephedrine pills from an individual referred to as "Goober." *See id.* at 272-74.

The undersigned Magistrate Judge finds that Ms. Purcell adequately advised the Petitioner in connection with the plea agreement offered by the government, and that her performance in this regard was not constitutionally defective. The Petitioner is therefore not entitled to post-conviction relief on this basis.

### 2. Failure to identify the evidence supporting count two.

The Petitioner contends that Ms. Purcell rendered ineffective assistance by failing to file a pre-trial motion for a bill of particulars to clear up alleged confusion over the drug evidence underlying count two of the indictment, *i. e.*, that Ms. Purcell mistakenly believed that the drugs supporting count two were taken from the travel trailer at Bluetop rather than the trunk of the Petitioner's car when she was arrested on August 23, 2003. The Petitioner argues that if she had known that the drugs were taken from her car, she would have offered to plead guilty to count two and thereby avoided going to trial. The undersigned Magistrate Judge finds this argument unpersuasive.

Ms. Purcell's notes do suggest some confusion about evidence supporting count two, *i. e.*, a handwritten notation on an evidence log indicates that the methamphetamine supporting count two had been found in the fifth-wheel trailer. *See* Docket No. 3, Ex. 1-1. But Ms. Purcell testified she made this note while going over evidence with the Petitioner and it meant only "that originally [the Petitioner] believed it was out of the Jayco travel trailer because whenever they did–when the Cherokee Nation and Cherokee County came upon Bluetop with a search warrant, there was a travel trailer, there was, you know, meth manufacturing and things found in that." *See* Docket No. 80, Ex. 1, pp. 250, 251. Ms. Purcell added that shortly after the note was made, she looked at the indictment, compared it with information she had obtained from the Cherokee County Sheriff's Office and ascertained that the methamphetamine supporting count two was found in the trunk of Petitioner's car. *See id.* at 251. Ms. Purcell also testified that there was a discrepancy in the amount of methamphetamine noted in the indictment and the amount

-18-

found in the trunk due to lab results showing a weight recovered amount of 20.38 grams but a purity amount of just over. *See id.* at 255. Ms. Purcell discussed all of this with both the prosecutor and the Petitioner, *see id.* at 254-55, 256, so it is clear Ms. Purcell was not confused about the evidence supporting count two.

Assuming *arguendo* that Ms. Purcell had been confused about this evidence, it is difficult to imagine how the Petitioner could have been prejudiced thereby. There is no indication the government would have accepted any offer by the Plaintiff to plead guilty to two; the only offers tendered by the government involved count one. Furthermore, it is unlikely the Petitioner would have been any more favorably disposed toward a guilty plea on count two than she was on count one. As the Petitioner notes, the evidence against her on both counts was overwhelming, *see* Docket No. 3, p. 16, yet she still refused to plead guilty to count one, and the government conditioned any plea agreement on cooperation, which the Petitioner was unable or unwilling to provide. *See* Docket No. 80, Ex. 1, pp. 271-74. The undersigned Magistrate Judge therefore finds that the Petitioner was not prejudiced by any misunderstanding on Ms. Purcell's part (if any) as to evidence supporting count two of the indictment.[3]

### 3. Refusal to allow the Petitioner to testify in her own defense.

"A criminal defendant has a constitutional right to testify in his own behalf at trial." *Cannon v. Mullin*, 383 F.3d 1152, 1171 (10th Cir. 2004), *citing Rock v. Arkansas*,

---

[3] The Petitioner also contends that Ms. Purcell rendered ineffective assistance of counsel by failing to file a motion to suppress the evidence seized during the September 24, 2003 traffic stop on which count one was based, but both the District Judge and the Tenth Circuit rejected this contention. *See* Docket No. 11, p. 5, n. 4; Docket No. 32, p. 2 n. 1.

483 U.S. 44, 49-52 (1987). Counsel has an obligation to "inform the defendant that he has the right to testify and that the decision whether to testify belongs solely to [the defendant]." *Id.* Further, counsel should also "discuss with the defendant the strategic implications of choosing whether to testify, and should make a recommendation to the defendant." *Id.* When counsel refuses to honor a defendant's wish to testify on her own behalf, the first prong of the *Strickland* test, *i. e.*, deficient performance, is satisfied. *Id.* However, the defendant must still satisfy the prejudice prong of the *Strickland* test in order to prevail on an ineffective assistance of counsel claim. Prejudice can be shown when "there is a reasonable probability that defendant's testimony would have raised in a juror's mind a reasonable doubt concerning his guilt." *Cannon*, 383 F.3d at 1171, *citing Strickland*, 466 U.S. at 694-95. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; *Cannon*, 383 F.3d at 1171. The Petitioner contends that Ms. Purcell "refused to allow [her] to testify, failing to advise her that it was her right that only she could waive." *See* Docket No. 3, p. 19.

The testimony on this point was disputed at the evidentiary hearing. The Petitioner testified that the subject of her trial testimony never came up until the morning of trial, when she noticed her name was not the witness list. She expressed her dissatisfaction to Ms. Purcell, who allegedly replied she would "not put [the Petitioner] on the stand." *See* Docket No. 80, Ex. 1, p. 193. According to the Petitioner, she offered no argument on this point because of Ms. Purcell's tone of voice. *Id.* Ms. Purcell, on the other hand, testified that she discussed the right to testify at trial with the Petitioner, but she did *not*

want to testify and never mentioned a desire to do so at any point. *See* Docket No. 80, Ex. 1, p. 244. Ms. Purcell was adamant that nothing she said could have been misconstrued as indicating that it was not the Petitioner's *right* to decide for herself whether to testify at trial. *See id.* at 245. Ms. Purcell also testified on cross-examination that she specifically asked the Petitioner if she wanted to testify before beginning her case-in-chief, and the Petitioner declined. *See id.* at 267.

The undersigned Magistrate Judge finds Ms. Purcell's testimony more persuasive on this point and therefore concludes that she did not fail to properly advise the Petitioner regarding her constitutional right to testify at trial. But assuming *arguendo* Ms. Purcell did fail to properly advise the Petitioner, post-conviction relief would be inappropriate unless the Petitioner could demonstrate that "there was a reasonable probability that [her] testimony would have raised in a juror's mind a reasonable doubt concerning guilt." *Cannon*, 383 F.3d at 1171, *citing Strickland*, 466 U.S. at 694-95. The Petitioner claims in her affidavit she would have testified: (i) that she did not live in the travel trailer at Bluetop; (ii) that she was not involved in manufacturing methamphetamine; (iii) that she did not use, carry or possess any of the firearms found in the trailer at Bluetop; (iv) that she was attempting to cooperate with the government by "finding out where and how to buy pills and set up purchases of pills by the government, which is what [she] was talking about on the recorded telephone calls played at trial"; (v) that she knew Daniel Layman and had told him on a prior occasion he was unwelcome at her house because Clonnie Layman had informed her of his "anger problems"; and (vi) that she was supported by

boyfriend Colby Brewer, who sent her $500 per week. *See* Docket No. 3, Ex. 1. The undersigned Magistrate Judge finds no reasonable probability that this testimony would have raised any reasonable doubt about the Petitioner's guilt. The first three areas of testimony are essentially denials of the government's elements of proof against the Petitioner, and it is difficult to see how such denials would have added anything to the presumption of innocence afforded to the Petitioner, particularly in light of the substantial impeachment evidence the jury would also have heard. The testimony about Daniel Layman is essentially impeachment evidence, and since Daniel Layman *was* impeached during his testimony, it is doubtful that this testimony would have changed the outcome of the trial. It is hard to say if the jurors would have believed the Petitioner's testimony about Colby Brewer, but even if they had, this evidence contradicts very little of the government's case against the Petitioner for participating in the manufacture of methamphetamine at Bluetop. In any event, Colby Brewer himself could have given this testimony, but there is no indication that the Petitioner ever discussed him with Ms. Purcell. Finally, regarding the Petitioner's explanation for the incriminating jailhouse phone calls, it is highly unlikely the jury would have believed that the Petitioner was cooperating with the government given her refusal to do so to obtain a favorable plea agreement. For all these reasons, the undersigned Magistrate Judge finds the Petitioner was not prejudiced by the failure on Ms. Purcell's part (if any) to properly advise her as to her constitutional right to testify at trial.

### C. Failure of Appellate Counsel to Request *En Banc* Review

The Petitioner also argues the Tenth Circuit erroneously affirmed her conviction on count five by finding the required nexus to gun based on a misreading of testimony provided by Daniel Layman. *See United States v. Lopez.* 372 F.3d 1207, fn. 4 (10th Cir. 2004) ("'In cases involving joint occupancy of a place where contraband is found, mere control or dominion over the place in which the contraband is found is not enough to establish constructive possession.' Rather, 'the government is required to present 'direct or circumstantial evidence to show some connection or nexus individually linking the defendant to the contraband.'"), *quoting United States v. McKissick*, 204 F.3d 1282, 1291 (10th Cir. 2000). The Petitioner contends appellate counsel should have sought rehearing *en banc* to correct this misreading and that his failure to do so amounted to ineffective assistance of counsel. Whatever the merits of the Petitioner's argument about misreading of evidence,[4] there is "no constitutional right to counsel in seeking rehearing en banc or in filing a petition for writ of certiorari." *United States v. Ivory*, 2010 WL 1816236, *4 (D. Kan. Feb. 26, 2010), *citing Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987) ("We think that since a defendant has no federal constitutional right to counsel when pursuing a discretionary appeal on direct review of his conviction, *a fortiori*, he has no such right when attacking a conviction that has long since become final upon exhaustion of the appellate process."). Because the Petitioner had no constitutional right to counsel with regard to an *en banc* rehearing by the Tenth Circuit, the failure by appellate counsel to request a rehearing cannot constitute ineffective assistance of counsel. *See, e. g., United*

---

[4] The undersigned Magistrate Judge agrees with the District Judge that it is not altogether clear that the Tenth Circuit did in fact "misread the ambiguous testimony." *See* Docket No. 11, p. 7.

*States v. Thomas*, 33 Fed. Appx. 446, 448 (10th Cir. 2002) ("Review by the Supreme Court is discretionary . . . and the Supreme Court has held that defendants have no right to counsel to pursue discretionary review. . . Because petitioner had no constitutional right to counsel, he was not deprived of effective assistance of counsel when his attorney did not file a petition for writ of certiorari.") [unpublished opinion]. *See also, McNeal v. United States*, 54 F.3d 776 (6th Cir. 1995) ("The logic of *Wainwright* and *Ross* is that there is no constitutional right to counsel in seeking rehearing en banc – and where there is no constitutional right to counsel, the client's constitutional rights cannot be violated by the allegedly defective performance of his lawyer.") [unpublished opinion], *citing Wainwright v. Torna*, 455 U.S. 586, 587 (1982) and *Ross v. Moffitt*, 417 U.S. 600, 607 (1974). The Petitioner is consequently not entitled to post-conviction relief on this basis.

### D. Cumulative Error

The Petitioner urges consideration of her various contentions under the doctrine of cumulative error, which "'aggregates all errors found to be harmless and analyzes whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless.'" *Cargle v. Mullin*, 317 F.3d 1196, 1206 (10th Cir. 2003), *quoting United States v. Toles*, 297 F.3d 959, 972 (10th Cir. 2002). But "[i]n the absence of any error, a cumulative error analysis is not warranted." *United States v. Burkley*, 370 Fed. Appx. 899 (10th Cir. 2010) [unpublished opinion], *citing United States v. Rivera*, 900 F.2d 1462, 1471 (10th Cir. 1990) (en banc). Because the

undersigned Magistrate Judge finds no error in analyzing the Petitioner's claims of ineffective assistance, a cumulative error analysis is inapplicable to this case.

## CONCLUSION

In summary, the undersigned Magistrate Judge finds: (i) that the Petitioner was afforded effective assistance of counsel in connection with trial preparation and the plea process; (ii) that the Petitioner is not entitled to counsel in seeking rehearing *en banc* and was therefore not denied effective assistance of counsel by failure to request such relief; and (iii) that cumulative error analysis is inapplicable here. The undersigned Magistrate Judge therefore concludes that Petitioner is not entitled to relief under 28 U.S.C. § 2255 and that her Petition should be in all things denied.

The undersigned Magistrate Judge therefore PROPOSES the findings set forth above and accordingly RECOMMENDS that the Motion Pursuant to 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody [Docket No. 1] be in all things DENIED. Objections to this Report and Recommendation must be filed within fourteen days. *See* 28 U.S.C. 636(b)(1); Fed. R. Civ. P. 72

IT IS SO ORDERED this 21st day of November, 2012.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**